IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No._____

Sheree Anderson,

    Plaintiff,

v.

Northampton County,

    Defendant.

**COMPLAINT AND JURY DEMAND**

Plaintiff Sheree Anderson, through her counsel, the law firm of Williams & Ray, PLLC, for her Complaint and Jury Demand alleges the following:

## I.    INTRODUCTION

1. Plaintiff Sheree Anderson ("Plaintiff" or "Ms. Anderson") was wrongfully terminated from her position in Human Resources for Northampton County ("Northampton" or the "County") because she provided another County employee with information about benefits under the Family Medical Leave Act ("FMLA"). Following her termination, the County denied Ms. Anderson her right to appeal her termination in direct contravention of the County's policy. Arising from these facts, Plaintiff Anderson's Complaint alleges claims for relief for Violation of Due Process Property Interest pursuant to 42 U.S.C. § 1983 and for a violation of the FMLA pursuant to 29 U.S.C. § 2601, *et. seq*.

## II.    PARTIES

2. Plaintiff is a resident of the town of Gaston, Northampton County, North Carolina. Plaintiff was employed by the County as a Personnel Specialist in Human Resources at the time of her termination on July 24, 2018.

3. Northampton County is a body politic and corporate existing under and existing by virtue of Chapter 153A of the North Carolina General Statutes.

## III. JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to 42 U.S.C. § 1983 and 29 U.S.C. § 2601, *et seq.*

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendant is a county is located within the Northern Division of the Eastern District of North Carolina and all relevant events herein stated giving rise to this Complaint occurred within said county.

## IV. FACTUAL ALLEGATIONS

### A. Ms. Anderson's Employment Background at Northampton County

6. Ms. Anderson worked for Northampton County from May 1, 2004 until July 24, 2018.

7. Throughout Ms. Anderson's employment with the County, her performance was excellent. In fact, all of Ms. Anderson's annual performance evaluations ranked her above average or better without exception. Specifically, in her most recent evaluation conducted less than two months prior to her termination, Ms. Anderson received the rating of "outstanding," the highest rating possible, in all categories.

8. As a result of her excellent performance, Ms. Anderson worked her way up in the County from her starting position as an Office Assistant in 2004 to a Personnel Assistant in 2006, then to a Personnel Technician in 2010, and then finally to a Personnel Specialist in Human Resources ("HR") in 2014 — the position she held at the time of her termination.

9. Pursuant to the County's formal job description, Plaintiff Anderson's job duties as a Personnel Specialist in HR included *inter alia*:

> Serve[] as a resource to department heads and employees in all human resources services to include policy, procedure interpretation and guidance to uphold and apply workplace policies or utilization of employment benefits ...
>
> Participate[] in the review of medial information to assist with proper documentation of job-related injuries, family medical leave or the shared leave practice of sick time donations to a county employee, due to a prolonged illness…
>
> Oversee[] the maintenance of employee benefits records; provide training for understating/utilization of employee benefits…

10. When Ms. Anderson began her employment with the County, she received a copy of the Northampton County Personnel Policy ("the Policy"). From time to time, Ms. Anderson received updates to the Policy. Ms. Anderson reviewed the updates and stayed current on the Policy.

### B. The Northampton County Personnel Policy

11. According to Article I of the Policy entitled *Organization of Personnel System*, it "is established under the authority of Chapter 153A, Article 5, and for those employees subject to the STATE HUMAN RESOURCES ACT, Chapter 126 of the General Statues of North Carolina."

12. The Policy provides that its purpose "is to establish a human resources system that will promote fair and effective means of employee recruitment and selection, develop and maintain an efficient and responsible workforce, and provide a means for removal of unsatisfactory employees."

13. According to Article VIII of the Policy entitled *Separation, Disciplinary Action & Reinstatement:*

> There are two (2) bases for the discipline or dismissal of employees under the statutory standard of "just cause" as set out in General Statute 126-35.
>
> These two (2) bases are:

> 1. Discipline or dismissal imposed on the basis of <u>unsatisfactory job performance</u>, including grossly inefficient job performance.
>
> 2. Discipline or dismissal imposed on the basis of <u>unacceptable personal conduct</u>.

(Emphasis in original).

14. The Policy provides various due process guarantees, as well, that apply when an adverse action is taken against an employee. For example, when an employee is terminated, the employee is entitled post-termination process which is defined in Article IX entitled *Grievance Procedures and Appeal Policies* and its sub-Section 3 entitled *Appeal of Adverse Actions for Permanent General County Employees.* It describes the procedures that County employees may take to appeal an adverse action. Specifically, this section of the Policy describes three steps that a General County employee with Permanent status may take to appeal the adverse action. Those steps are:

> **STEP 1:** The employee with an adverse action who seeks the first step in the appeal process shall request IN WRITING for an appeal. The request must be submitted to the Department Head and must be received within <u>fifteen</u> (15) days of the occurrence of the adverse action.
>
> The Department Head will then schedule a formal hearing and inform the employee in writing of the specific date and time of the hearing. The employee, at this hearing, will be able to provide information to the Department Head regarding the adverse action and reasons for the appeal. All pertinent evidence and information should be submitted in copy form to the Department Head for consideration. The Department Head shall then render a decision in writing within <u>ten</u> (10) days to the employee.
>
> **STEP 2**: If the employee is **not** satisfied with the decision made, the employee may request a second appeal to the County Manager. The employee shall submit a formal appeal request in writing to the Northampton County Manager within <u>thirty</u> (30) days of the date of the letter of the Department Head decision notification.
>
> The County Manager will then schedule a formal appeals hearing and inform the employee in writing of the date and time of this hearing. The employee, at this hearing, will be able to provide evidence on their behalf to the County Manager regarding the

adverse action and reasons for the appeal. All pertinent evidence and information should be submitted in copy form to the County Manager. The County Manager shall then render a decision regarding the appeal in writing within <u>ten</u> (10) days to the employee.

**STEP 3**: If the employee is not satisfied with the decision made by the County Manager, the employee may request a second appeal to the Northampton County Board of Commissioners. The request shall be submitted in writing within <u>thirty</u> (30) days of the date of the decision notification letter from the County Manager. The request shall be in writing and directed to the Clerk to the Board of Northampton County Commissioners.

The Clerk will then schedule a formal appeals hearing with the Northampton County Commissioners and notify the employee in writing of the date and time.

The employee, at this hearing, will be able to provide evidence on their behalf to the County Commissioners regarding the adverse action and reasons for the appeal. All pertinent evidence and information should be submitted in copy form to the Commissioners for consideration.

The Board of Commissioners will render a decision regarding the appeal in writing within <u>ten</u> (10) days to the employee.

This decision is the final decision and the last step in the Appeal Process for County employees **not** subject to the STATE HUMAN RESOURCES ACT.

(Emphasis in original).

15. This section of the Policy also provides a series of "Key Points" related to the Appeals described therein. Those Key Points are:

a) All timeframes must be met. Failure to meet timeframes results in loss of appeal rights under this policy.

b) All requests for appeals must be in writing.

c) Employees in probationary or temporary employment situations **<u>do not</u>** have rights under this policy.

d) Each adverse action shall have a copy of the appeals process attached, as well as each written decision in every step of the appeal process.

**5**/12

e) Only employees in a permanent status have appeal rights under this policy.

(Emphasis in original).

### C. Allegations Related to Ms. Anderson's Wrongful Termination

16. On July 12, 2018, then-Northampton-County-Health-Department employee, Dana Hardin, contacted the HR office to inquire about benefits. At that time, Ms. Anderson was aware that Ms. Hardin was leaving her position in the near future as Ms. Anderson was responsible for posting the job opening resulting from Ms. Hardin's impending departure. At that time, Ms. Hardin had been with the County for approximately nine years. The purpose of Ms. Hardin's visit to HR was to inquire about scheduling an exit interview and about health benefits. Ms. Anderson provided the requested information and directed Ms. Hardin to her department head for further guidance.

17. On July 16, 2018, Ms. Hardin visited the HR office and met with Ms. Anderson to follow up with health-care related questions. At this meeting, Ms. Anderson learned more about Ms. Hardin's resignation. Specifically, Ms. Hardin disclosed that she required surgery for a medical condition, and that the surgery would disable her ability to work for multiple weeks. Because she was going to be out for multiple weeks, as Ms. Hardin explained, she felt compelled to resign. In response, Ms. Anderson explained to Ms. Hardin her rights under the FMLA and certain company policies. These rights included the possibility of taking federally protected FMLA leave and the use of accrued sick time while she was out on leave. Ms. Anderson explained to Ms. Hardin the procedures for availing herself to those benefits. Importantly, Ms. Anderson only explained the benefits that were available but did not, nor could she, ensure that Ms. Hardin would be granted those benefits.

18. At the time of this meeting on July 16, 2018, Ms. Hardin had accrued 634.94 hours of sick leave and 204.75 hours of annual leave.

19. Following the July 16, 2018 meeting, Ms. Hardin began the application process for FMLA leave.

20. The Department Head over Ms. Anderson at this time was Marcenda Rogers. On the same day as Ms. Anderson's conversation with Ms. Hardin, Ms. Rogers learned that Ms. Hardin was applying for FMLA leave as result of the information provided by Ms. Anderson, and, should the leave be granted, the County would be required to hold Ms. Hardin's position open until the expiration of that leave. Department Head Rogers believed Ms. Anderson taught Ms. Hardin to "abuse" the system.

21. Ms. Hardin's application for FMLA leave was subsequently granted by the County.

22. Ms. Anderson was not involved in any way in the County's decision to grant Ms. Hardin's application for leave.

23. On July 17, 2018, as a direct result of the information that Ms. Anderson provided to Ms. Hardin, Department Head Rogers issued Ms. Anderson a three-day suspension.

24. On July 24, 2018, as further consequence to Ms. Anderson action of providing information to Ms. Hardin, Department Head Rogers terminated Ms. Anderson.

25. Department Head Rogers enlisted the Northampton County Sheriff's Department to deliver the termination letter to Ms. Anderson. The Sheriff unsuccessfully attempted delivery on July 25, 2018 and instead taped the letter to Ms. Anderson's front door.

26. Employing the Sheriff's Department to deliver a termination letter was uncustomary.

27. Ms. Anderson did not receive personal notice of her termination until July 27, 2020.

### D. Allegations Related to Ms. Anderson's Deprivation of Due Process

28. At the time she was terminated, Ms. Anderson was classified as a General County Employee with Permanent status as defined by the Policy. Thus, Ms. Anderson could only be terminated for behavior that fit within the two bases in Article VIII of the Policy (unsatisfactory job performance or unacceptable personal conduct), and she was entitled to the right to appeal the termination decision as set forth in Article IX of the Policy.

29. On August 7, 2018 — fourteen (14) days after the termination letter date and eleven (11) days after receiving actual notice — Ms. Anderson sought to appeal the decision. Ms. Anderson emailed all relevant parties: County Manager Kimberly Turner, Department Head Rogers, and the general County "Human Resources" distribution-chain email address stating, "I am writing to request participation in the appeals process and wish to set a meeting with you and/or the Board of Commissioners."

30. Department Head Rogers admits to receiving (but not to reading) the August 7, 2018 email.

31. On August 9, 2018 — sixteen (16) days after the termination letter date and thirteen (13) days after Ms. Anderson received actual notice of the termination — County Manager Turner responded to the email with a cursory quote of the Policy, and nothing more:

> Good Morning Ms. Anderson,
>
> According to Northampton County personnel Policy Article IX, Section 3: Appeal of Adverse Action for Permanent General County Employees, the process is as follows:
>
> STEP 1: The employee with an adverse action who seeks the first step in the appeal process shall request IN WRITING for an appeal. The request must be submitted to the Department Head and must be received within fifteen (15) days of the occurrence of the adverse action. The Department Head will then schedule a formal hearing and inform the employee in writing of the specific date and time of the hearing. The employee, at this hearing, will be able to provide

> information to the Department Head regarding the adverse action and reasons for the appeal. All pertinent evidence and information should be submitted in copy form to the Department Head for consideration. The Department Head shall then render a decision in writing within ten (10) days to the employee.
>
> Please refer to the Grievance Procedures and Appeal Policies that was provided to you with your dismissal letter.
>
> Thank you,
>
> Kimberly L. Turner

32. That same day, Ms. Anderson again emailed Department Head Rogers, County Manager Turner, and the general County "Human Resources" distribution-chain email address stating, "Due to my recent termination, I am writing to execute the first step in the appeal process…"

33. To this email, Department Head Rogers responded. Despite Ms. Anderson still being within thirteen days (13) of notice of her termination, despite having *twice* duly noticing Department Head Rogers of her appeal, and despite the Policy affording Ms. Anderson fifteen (15) days to do so, Department Head Rogers rejected Ms. Anderson's appeal outright for being time-barred:

> I have received your request to execute the first step in the appeal process. However, you have exceeded the allotted time for an appeal. Please review the Northampton County Personnel Policy Article IX, Section 3 below.

### E. **Allegations Related to Ms. Anderson's Unemployment Claim**

34. Shortly after Department Head Rogers illegally deprived Ms. Anderson of her right to appeal, Ms. Anderson applied for unemployment benefits, and Northampton County contested the claim. In an unemployment-appeal hearing with the Department of Commerce on October 25, 2018, it became clear that Ms. Anderson and the County had no dispute as to the underlying facts giving rise to Ms. Anderson's termination: Ms. Anderson was terminated because she advised

Ms. Hardin of Ms. Hardin's own rights under the FMLA and County policy. The County asserted this conduct to be a terminable offense; Ms. Anderson believed it to be within her rights and in fact part of her job. Appeals Referee, Milford K. Kirby, found in favor of Ms. Anderson, stating *inter alia* that Ms. Anderson "gave an existing employee truthful information about how to obtain benefits she had earned from the county during her years of employment."

35. Notwithstanding the result and findings by the Appeals Referee in the unemployment-appeal hearing, Department Head Rogers continued to assert that Ms. Anderson behaved improperly. Specifically, on December 5, 2018, Department Head Rogers submitted a written response to an employment verification inquiry from the Office of Personnel Management in which she stated that, despite legal and factual findings to the contrary, Ms. Anderson was "fired for unfavorable conduct and not eligible for rehire for reasons related to unfavorable employment."

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### Denial of Due Process Property Interest Pursuant to § 1983

36. Plaintiff hereby incorporates all foregoing paragraphs as though fully alleged herein.

37. Plaintiff had a property interest in her position as Personnel Specialist in Human Resources and in continuing employment with Northampton County by virtue of its Policy regarding separation and discipline.

38. Defendant deprived Plaintiff of her legally protected property right in her employment by terminating her.

39. Defendant violated Plaintiff's Constitutional right to Due Process by failing to provide her with the post-deprivation appeal process to which she was entitled after depriving her of her property interest.

### SECOND CLAIM FOR RELIEF

### Unlawful Discrimination in Violation of the FMLA

40. Plaintiff hereby incorporates all foregoing paragraphs as though fully alleged herein.

41. Plaintiff's job responsibilities required, in part, that she provide County employees with information about, and to ensure understanding of, employment benefits, including benefits conferred by the FMLA.

42. Defendant terminated Plaintiff because she provided truthful information to a County employee about the FMLA.

43. Defendant's behavior constitutes an interference or restraint of the exercising of rights provided under the FMLA.

44. As a result of Defendant's unlawful conduct, Plaintiff has sustained damages, including lost wages and benefits, liquidated damages and attorney's fees and costs.

### JURY TRIAL DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Anderson respectfully requests that this Court enter a judgment in her favor and against the Defendant and award the following:

(a) Injunctive, declaratory, and prospective relief as allowed by law;

(b) Damages in such amount as shall be proven at trial for lost back pay and damages including lost benefits, wages, promotions, tenure, seniority, and other employment opportunities;

(c) An order to reinstate Plaintiff Anderson, or in the alternative, front pay and benefits in an appropriate amount;

(d) Liquidated damages as allowed by law;

(e) Attorney's fees and costs as provided for by law;

(f) Pre- and post-judgment interest as provided for by law; and

(g) Such other relief as the Court deems just on proper.

Respectfully submitted on this 23rd day of October, 2020.

**WILLIAMS & RAY, PLLC:**

/s/ Brycen G. Williams
_____
Brycen G. Williams
State Bar No. 50253
Williams & Ray, PLLC
555 Fayetteville St., Suite 201
Raleigh, NC 27601
Phone: (888) 315-3841
Fax: (303) 502.5821
Email: bw@williamsray.com
*Attorney for Plaintiff*

Plaintiff's Address
Sheree Anderson
326 Green Acres Drive
Gaston, NC 27832